ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL ESPCECIAL

| | | |
|---|---|---|
| **AJM MANAGEMENT LLC**<br><br>Recurrente<br><br>v.<br><br>**SECRETARÍA AUXILIAR DE POLÍTICA CONTRIBUTIVA**<br><br>Recurrida | KLRA202300484 | **REVISIÓN** procedente del **Departamento de Hacienda, Secretaría de Procedimiento Adjudicativo**<br><br>Caso Núm.: **2022-EC-223**<br><br>Sobre: Exención Contributiva |

Panel integrado por su presidente el Juez Bermúdez Torres, el Juez Adames Soto y la Jueza Boria Vizcarrondo[1].

Boria Vizcarrondo, Jueza Ponente.

## SENTENCIA

En San Juan, Puerto Rico, a 20 de febrero de 2024.

Comparece ante nos AJM Management, LLC (AJM o Recurrente) y nos solicita que revoquemos la *Resolución* de 15 de agosto de 2023, emitida por la Secretaría Auxiliar de Procedimiento Adjudicativo del Departamento de Hacienda de Puerto Rico (SPA).[2] Por virtud del aludido dictamen, SPA declaró *NO HA LUGAR* a la *Querella* radicada por AJM en contra de la Secretaría Auxiliar de Política Contributiva (SAPC).[3] SAPC había denegado la *Solicitud* de AJM que pedía beneficiarse de la exención contributiva que ofrece la Ley Núm. 168 de 30 de junio de 1968, según enmendada (13 LPRA sec. 371 *et seq.*) (Ley Núm. 168) a los operadores de unidades hospitalarias.

---

[1] Mediante la Orden Administrativa OATA-2023-212 de 6 de diciembre de 2023, se designó a la Hon. Lersy G. Boria Vizcarrondo como integrante de este Panel Especial en sustitución de la Hon. Waleska I. Aldebol Mora.
[2] Apéndice del *Recurso de revisión administrativa*, Anejo I, págs. 1-7. Archivada y notificada en autos el 15 de agosto de 2023.
[3] *Íd.*, Anejo III, págs. 11-28.

Por los fundamentos que exponemos a continuación, *revocamos parcialmente* la *Resolución* de referencia únicamente en cuanto a la determinación sobre los incentivos del art. 1 (b) de la Ley Núm. 168. Así modificada, se *confirma.*

I.

El caso de epígrafe se originó el 23 de febrero de 2022, cuando AJM solicitó una exención contributiva al amparo de la Ley Núm. 168.[4] La Ley Núm. 168, *Íd.*, permite que los operadores de unidades hospitalarias se beneficien de exenciones contributivas.

AJM había contratado con el Departamento de Asuntos de los Veteranos del Gobierno Federal (VA) para construir un hospital, conocido como el "VA Community-Based Outpatient Clinic of Ponce" (Hospital), en el Municipio de Ponce.[5] De acuerdo con el *Contrato* suscrito entre AJM y VA, AJM asumiría todos los costos relacionados con el material y la construcción del Hospital, y posteriormente, VA asumiría las operaciones médico-hospitalarias mediante arrendamiento por un periodo acordado.[6] A su vez, AJM estaría a cargo y sería responsable por las operaciones y gastos de mantenimiento y limpieza.[7] AJM también sería el titular de la propiedad.[8]

El 28 de octubre de 2022, SAPC denegó la *Solicitud.*[9] El 23 de noviembre de 2022, AJM presentó una *Querella* ante SPA solicitando la revisión de la denegatoria por SAPC y la concesión de "todas las exenciones dispuestas en el Artículo 1 de la Ley Núm. 168".[10] Como parte del proceso adjudicativo del Departamento de Hacienda, el 1 de junio de 2023, SPA celebró una vista administrativa.[11] Durante

---

[4] *Íd.*, Anejo II, págs. 8-10.
[5] *Íd.*, Anejo VIII, págs. 56-734.
[6] *Íd.*
[7] *Íd.*
[8] *Íd.*
[9] *Íd.*, Anejo II, págs. 8-10.
[10] *Íd.*, Anejo III, págs. 23-24.
[11] *Íd.*, Anejo I, págs. 1-7.

la vista, "SAPC se reafirmó en la denegación y argumentó que [AJM] [...] no constituye una unidad hospitalaria conforme a las disposiciones de la Ley Núm. 168, toda vez que no está operando la misma".[12] Por su parte, AJM argumentó que, "la controversia versa sobre una diferencia de interpretación del concepto de operación de unidad hospitalaria".[13]

Además de considerar los argumentos de las partes, SPA analizó el texto de la Ley Núm. 168, *Íd.* El artículo 1 de la Ley Núm. 168 dispone que "[t]oda persona natural o jurídica que [...] **se dedique a la operación de una unidad hospitalaria** [...] podrá disfrutar [...] de los siguientes beneficios". *Íd.*, art. 1. (Énfasis nuestro). El artículo 5 dispone que "[e]n ningún caso se considerará como unidad hospitalaria aquella que no opere sin una licencia expedida por el Departamento de Salud". *Íd.*, art. 5. SPA también hizo referencia al Reglamento Núm. 1686, para implementar las disposiciones de la Ley Núm. 168, aprobada en 30 de junio de 1968, según enmendada, por la Ley 76 de junio 23 de 1971, que concede incentivos contributivos a personas naturales o jurídicas que se dediquen a la operación de unidades hospitalarias, Departamento de Hacienda, del 10 de agosto de 1973 (Reglamento Núm. 1686). El Reglamento Núm. 1686 define varios términos en la Ley Núm. 168 y aclara el proceso para las solicitudes y concesión de incentivos contributivos al amparo de la Ley Núm. 168.

El 15 de agosto de 2023, SPA determinó NO HA LUGAR a la *Querella*.[14] Concluyó que:

> Según la prueba presentada por las partes ante nuestra consideración, [AJM] construirá una edificación, se encargará del mantenimiento de equipos, sistemas de construcción, incluso lo sistemas mecánicos, eléctricos y de plomería y se encargará de la limpieza de las facilidades una vez no haya actividad

---

[12] *Íd.*, pág. 1.

[13] *Íd.*

[14] *Íd.*, pág. 4.

médica. **Es decir, [AJM] no operará el hospital en lo que a servicios médico-hospitalarios se refiere.**

Conforme al derecho expuesto [AJM] **no es una entidad que se dedique a operar una unidad hospitalaria y brindar los servicios médico-hospitalarios en dicha unidad**, por lo que [...] no tiene derecho a disfrutar de los beneficios contributivos dispuestos en los apartados (a), (b), (c) o (e) del Artículo 1 de la Ley 168.[15]

En resumidas cuentas, SPA se enfocó en los deberes y responsabilidades de AJM y de VA.[16] Concluyó que sólo VA estaría encargado de los servicios médico-hospitalarios por lo que sería el único operador de la unidad hospitalaria.[17]

Inconforme, el 14 de septiembre de 2023, AJM recurrió a nuestro foro mediante un *Recurso de revisión administrativa* y señaló los siguientes errores:

**1. ERRÓ EL DEPARTAMENTO DE HACIENDA AL CONCLUIR QUE SE REQUIERE QUE UNA FACILIDAD DE VETERANOS DESARROLLADA POR EL GOBIERNO FEDERAL ESTÁ SUJETA AL REQUISITO DE LICENCIA EXPEDIDA POR EL DEPARTAMENTO DE SALUD.**
**2. ERRÓ EL DEPARTAMENTO DE HACIENDA AL NO CONCEDER LA EXENCIÓN A LA PARTE RECURRENTE, A PESAR DE QUE LA PRUEBA REFLEJÓ QUE LAS ACTIVIDADES QUE CONDUCE LA RECURRENTE SON ESENCIALES PARA LA OPERACIÓN DEL HOSPITAL.**[18]

En esencia, AJM nos solicita que revisemos la determinación de SPA, particularmente su interpretación de la frase "dedique a la operación de una unidad hospitalaria" del art. 1 de la Ley Núm. 168, *supra*. También solicita que revoquemos la *Resolución* y concederle los beneficios contributivos que ofrece el art. 1 (a) y el art. 1 (b) de la Ley Núm. 168, *Íd.*

Analizados los hechos que dieron lugar a la presente controversia, procedemos a discutir el derecho aplicable.

---

[15] *Íd.* (Énfasis nuestro).
[16] *Íd.*
[17] *Íd.*
[18] *Recurso de revisión administrativa*.

II.

A.

La interpretación de leyes es un ejercicio que los tribunales deben realizar cuidadosamente. "El éxito de nuestro sistema de poderes depende de que cada una de las ramas acepte y respete la autoridad de las otras y entienda la interrelación de sus funciones". *Senado v. Tribunal supremo y otros*, 208 DPR 115, 135 (2021). Los tribunales no pueden imponer sus interpretaciones sobre la intención legislativa cuando el texto de una ley es claro y libre de toda ambigüedad. *González Hernández v. González Hernández*, 181 DPR 746 (2011). El art. 22 del Código Civil de Puerto Rico, 31 LPRA sec. 5311., dispone que las palabras del texto de una ley se entienden por su "significado usual y corriente" y por el "use general y popular de las voces".

Ante la ambigüedad, los tribunales deben interpretar el significado de la ley a base de la intención legislativa. "Una expresión ambigua es la que es susceptible a dos o más significados, lo que requiere identificar, precisamente, cuál de las posibles definiciones es la correcta". *OCS v. Point Guard Ins.*, 205 DPR 1005, 1030 (2020). El art. 23 del Código Civil, *supra*, dispone que "su sentido debe buscarse en su espíritu o en su intención, en su contexto y en comparación con otras palabras y frases que se relacionen". Sin embargo, "[l]os tribunales no pueden, bajo el pretexto de buscar la intención legislativa en un estatuto, añadirle limitaciones o restricciones que no surjan de su texto". *González Hernández v. González Hernández, supra*, pág. 763. Nuestra interpretación debe "atribuirle un sentido que asegure el resultado que la Asamblea Legislativa o la agencia administrativa quiso obtener". *OCS v. Point Guard Ins., supra*, pág. 1030.

El Tribunal Supremo de Puerto Rico ha señalado que las leyes contributivas "deben recibir una interpretación razonable que tienda

a llevar a efecto el propósito y la intención del legislador". *Lilly Del Caribe v. CRIM*, 185 DPR 239, 251 (2012). Las mismas deben de interpretarse de "forma justa y conforme a sus propios y expresos términos". *Yiyi Motors, Inc. V. E.L.A.*, 177 DPR 230, 250 (2009). Sin embargo, las exenciones contributivas son una excepción a la norma. Deben entenderse como un privilegio concedido por el Estado para negar los efectos de las leyes contributivas. *Interior Developers v. Mun. de San Juan*, 177 DPR 693 (2009). En consecuencia, toda duda al respecto debe resolverse en contra de la existencia de la exención. *Lilly del Caribe v. Mun. De Carolina*, 210 DPR 306 (2022). Ahora bien, "también hemos hecho hincapié en que estas normas **no deben ser interpretadas restrictivamente si ello derrota la intención legislativa**". *Íd.*, pág. 322. (Énfasis en el original).

B.

El artículo 4.006 (c) de la Ley de la Judicatura de 2003, Ley Núm. 201-2003 (4 LPRA sec. 24y (c)) faculta al Tribunal de Apelaciones a atender las decisiones, órdenes y resoluciones finales de organismos o agencias administrativas. Los organismos administrativos merecen la mayor deferencia judicial, puesto que estos tienen el conocimiento especializado sobre los asuntos que les han sido delegados. *Hernández Feliciano v. Mun. Quebradillas*, 211 DPR 99 (2023); *Torres Rivera v. Policía de PR*, 196 DPR 606 (2016); *IFCO Recycling v. Aut. Desp. Sólidos*, 184 DPR 712 (2012). Al momento de revisar una decisión administrativa, el principio rector es el criterio de la razonabilidad de las decisiones y actuaciones de la agencia. *Íd.* Todas las decisiones administrativas gozan de una presunción de legalidad y corrección, por lo que la parte que las impugne debe producir suficiente evidencia para derrotarla. *Íd.*

Las facultades adjudicativas de una agencia están regidas por la Ley de Procedimiento Administrativo Uniforme del Gobierno de

Puerto Rico, Ley Núm. 38-2017 (3 LPRA sec. 9601 *et seq.*) (LPAU) y por la jurisprudencia aplicable. La sección 3.1 de la LPAU, *Íd.*, requiere que las agencias fundamenten sus resoluciones con determinaciones de hecho y conclusiones de derecho. Por lo tanto, la facultad revisora de los tribunales está limitada a determinar: (1) **que el remedio concedido por la agencia fuese el apropiado**; (2) si las determinaciones de hecho estuvieron basadas en evidencia sustancial que obre en el expediente administrativo; y (3) **si las conclusiones de derecho fueron correctas mediante su revisión completa y absoluta**. *Íd.*, sec. 4.5. (Énfasis nuestro).

Sobre la facultad revisora, nuestro Tribunal Supremo ha expresado que:

> [L]as determinaciones de hecho se deben sostener si se fundamentan en evidencia sustancial que surja de la totalidad del expediente administrativo. Mientras, la deferencia antes mencionada **no se extiende de manera automática** a las conclusiones de derecho emitidas por la agencia, ya que estas serán revisables en todos sus aspectos por el tribunal. **Esto es, que el tribunal las puede revisar sin sujeción a norma o criterio alguno**. *Hernández Feliciano v. Mun. Quebradillas, supra*, pág. 115. (citas omitidas) (Énfasis nuestro).

"[L]os foros apelativos debemos diferenciar entre asuntos de interpretación estatutaria, en la que los tribunales son especialistas, y los asuntos propios de la discreción o la pericia administrativa". *Íd.*, pág. 116. No obstante, la interpretación judicial del derecho no constituye una sustitución automática de las conclusiones derechos hechas por una agencia. *Íd.* El criterio administrativo solo debe ser descartado cuando "no se pueda hallar fundamento racional que explique o justifique el dictamen administrativo". *Rolón Martínez v. Supte. Policía*, 201 DPR 26, 36 (2018).

C.

Ante la escasez de facilidades hospitalarias, la Asamblea Legislativa aprobó la Ley Núm. 168. Exposición de Motivos de la Ley Núm. 168 de 30 de junio de 1968, *supra.* Esta tiene como propósito

fomentar la construcción y mejoras de instalaciones hospitalarias mediante una serie de incentivos contributivos. *Íd.* Para cumplir con su propósito, el art. 1 de la Ley Núm. 168, *Íd.*, establece lo siguiente:

Toda persona natural o jurídica que, previo el cumplimiento de las formalidades de esta ley, **se dedique a la operación de una unidad hospitalaria**, según se define dicho término más adelante, podrá disfrutar por un período de diez (10) años de los siguientes beneficios:

(a) Crédito contributivo de hasta el quince por ciento (15%) del total de gastos de nómina elegible que podrá utilizarse para sufragar hasta el cincuenta por ciento (50%) de la contribución sobre ingresos determinada por el Subtítulo A de la Ley Núm. 120 de 31 de octubre de 1994, conocida como el "Código de Rentas Internas de Puerto Rico de 1994" [Nota: Derogada y sustituida por la Ley 1-2011, según enmendada, "Código de Rentas Internas de Puerto Rico de 2011"], sobre el **ingreso neto proveniente de la prestación de servicios médico-hospitalarios** en una unidad hospitalaria.

(b) Exención total del pago de contribuciones sobre la propiedad, o aquella proporción de la propiedad, mueble e inmueble siempre que **la misma sea utilizada para prestar servicio médico-hospitalario, pertenezca a la unidad hospitalaria y esté ubicada dentro del perímetro de la institución cuya extensión a los fines de la exención aquí concedida está limitada a una cabida de diez (10) cuerdas**. La exención sobre la cabida de terrenos, en casos de unidades hospitalarias bajo el Artículo 5(a)(4), está limitada a una (1) cuerda.

(c) Exención total del pago de arbitrios estatales sobre toda clase de equipo, maquinaria y efecto (excluyendo piezas y accesorios para los mismos) **que fueren expresamente diseñados para el diagnóstico y tratamiento médico** de enfermedades humanas e introducidas por o consignados a la unidad hospitalaria.

(d) Exención total del pago de patentes, arbitrios y cualesquiera otras clases de contribuciones municipales; Disponiéndose, que ningún contratista o subcontratista de una persona natural o jurídica que se dedique a la operación de una unidad hospitalaria estará sujeta a cualquier contribución, impuesto, derecho, licencia, arbitrio, tasa o tarifa **por la construcción de obras a ser dedicadas a la operación de una unidad hospitalaria** dentro de un municipio impuesto por cualquier ordenanza de cualquier municipio.

(e) Exención total del pago de los impuestos y arbitrios estatales sobre los derivados del petróleo (excluyendo el residual no. 6 o bunker C) y cualquier otra mezcla de hidrocarburos, incluyendo el gas propano y gas natural, que una unidad hospitalaria utilice como combustible para la generación de energía eléctrica o térmica. La exención incluida en este inciso incluye aquellos impuestos o arbitrios establecidos en las Secciones

3020.07 y 3020.07A de la Ley 1-2011, según enmendada, conocida como "Código de Rentas Internas para un Nuevo Puerto Rico", o cualquier disposición en ley sobre ese tema, que le sustituya. (Énfasis nuestro).

La Ley Núm. 168, *Íd.*, tiene como propósito promover la construcción y mejoras de nuevas facilidades hospitalarias en Puerto Rico mediante la creación de incentivos contributivos. "[C]uando la agencia interpreta el estatuto que viene llamado a poner en vigor de forma tal que produce resultados **contrarios al propósito de la ley**, dicha interpretación no puede prevalecer". *Mun. de San Juan v. J.C.A.*, 149 DPR 263, 280 (1999). (Énfasis nuestro). Limitar el acceso a los beneficios contributivos de la ley solamente a las personas que operan los servicios médico-hospitalarios no cumpliría con la intención legislativa. Por consecuente, algunos de los incisos del art. 1 le aplican a quienes construyen "obras a ser dedicadas a la operación de una unidad hospitalaria", Ley Núm. 168, *supra*, art. 1 (d) y a quienes pagan contribuciones sobre la propiedad "siempre que la misma sea utilizada para prestar servicio médico-hospitalario, pertenezca a la unidad hospitalaria y esté ubicada dentro del perímetro de la institución cuya extensión a los fines de la exención aquí concedida está limitada a una cabida de diez (10) cuerdas". *Íd.*, art. 1. (b).

Para beneficiarse de los incentivos del art. 1, los contribuyentes deben tener alguna relación con una unidad hospitalaria. Para ser considerada como unidad hospitalaria, según la ley, la persona natural o jurídica debe haber comenzado sus operaciones, o haber sido construido, después de entrar en vigor la Ley Núm. 168 y cumplir con los siguientes criterios y ser un hospital general, "de tuberculosis, de enfermedades mentales o cualquier otra clase de hospital que se dedique al tratamiento de enfermedades del ser humano, así como **aquellas facilidades directamente relacionadas con su operación normal**".

Reglamento Núm. 1686, *supra*, sec. 3 (a) (1). (Énfasis nuestro). El Reglamento Núm. 1686, *Íd.*, aclara que el "término 'facilidades directamente relacionadas con su operación normal' incluye los terrenos dedicados a área de estacionamiento".

El Reglamento Núm. 1686, *Íd.*, también define lo que constituyen servicios médico-hospitalarios para propósitos de la Ley Núm. 168. Estos servicios se refieren a "servicios médicos en general **prestados por una 'unidad hospitalaria'**, sean [e]stos de hospital, de laboratorio, de rayos X; y servicios prestados por facultativos y/o demás personal profesional o [paramédico] en casas de convalecencia en relación con el tratamiento y la convalecencia de enfermedades de seres humanos". *Íd.*, sec. 3 (b). (Énfasis nuestro).

En resumen, una unidad hospitalaria contempla varios servicios, entre ellos los servicios médico-hospitalarios como servicios de apoyo a la operación normal de los hospitales. En ninguna parte de la Ley Núm. 168 se limita la definición de unidad hospitalaria a **únicamente** las áreas de servicios médico-hospitalarios.

D.

Tanto la Ley Núm. 168, como el Reglamento Núm. 1686, hacen hincapié en que "en ningún caso se considerará como unidad hospitalaria aquella que opere sin una licencia expedida por el Departamento de Salud". Este requisito es menester para poder beneficiarse de los incentivos que ofrece la ley.

Los procesos para la concesión de licencias por el Departamento de Salud están regidos por la Ley Núm. 2 de 7 de noviembre de 1975, (24 LPRA sec. 334 *et seq.*) (Ley Núm. 2) y por el Reglamento Núm. 9084, para regir el otorgamiento de certificados de necesidad y conveniencia, Departamento de Salud, del 17 de mayo de 2019 (Reglamento Núm. 9084). Ni la Ley Núm. 2, ni el Reglamento 9084, requieren de manera expresa que una entidad del

Gobierno Federal, como es el Departamento de Asuntos de los Veteranos, tenga que cumplir con los requisitos de licenciamiento del Departamento de Salud de Puerto Rico.

Un panel hermano tuvo ante su consideración un caso similar.[19] En esa ocasión, resolvimos que un contratista tenía derecho a beneficiarse de los incentivos contributivos contemplados en la Ley Núm. 168, *supra*, aunque este fuese contratista en un hospital del VA. Concluimos que no permitir que el contratista se beneficie de la exención resultaría en una construcción más costosa, frustrando los propósitos de la Ley Núm. 168.

En el caso de autos, AJM incluyó entre la prueba que obra en el expediente una *Consulta sobre certificado de necesidad y conveniencia para establecer "VA Mental Health and Recovery Facility"* del 11 de febrero de 2021.[20] En la *Consulta*, la Secretaría Auxiliar para Reglamentación y Acreditación de Facilidades de Salud acreditó que "las disposiciones de la Ley Núm. 2 y del Reglamento Núm. 9084 **no incluyen** una facilidad dedicada a pacientes veteranos y que operará bajo las leyes del Gobierno Federal, entre las facilidades sujetas a la obtención de un CNC para establecerse".[21] (Énfasis en el original).

Analizado el derecho aplicable, procedemos a aplicarlo a los hechos y controversias que nos ocupan.

### III.

AJM ha pedido que esta Curia revise los errores señalados y le conceda los remedios solicitados.

En primer lugar, AJM ha señalado que SPA erró al reconocer que VA tiene que cumplir con el requisito de licenciamiento por el Departamento de Salud que establece la Ley Núm. 168 y el

---

[19] Véase, KLAN201301079, panel compuesto por su presidenta, la Juez García García, el Juez Hernández Sánchez (juez ponente) y la Juez Grana Martínez.
[20] Apéndice del *Recurso de revisión administrativa*, supra, Anejo IX, págs. 760-61.
[21] *Íd.*

Reglamento Núm. 1686 para poder gozar de sus beneficios. En cuanto a este error, le asiste la razón al Recurrente.

Una facilidad de veteranos desarrollada por el Gobierno Federal, como lo es el Hospital que maneja el VA, no tiene que cumplir con los requisitos de licenciamiento por el Departamento de Salud para poder ser considerado como una unidad hospitalaria al amparo de la Ley Núm. 168. Resolver de forma contraria no cumpliría con los propósitos de la Ley Núm. 168. Por consiguiente, se cometió el primer error señalado.

AJM también nos señaló que SPA erró al no concederle los beneficios contributivos del art. 1 de la Ley Núm. 168, en particular los contenidos en los incisos (a) y (b). En cuanto al segundo error señalado, el Recurrente tiene razón únicamente en relación con su reclamo de beneficios al amparo del art. 1 (b) de la Ley Núm. 168. No le asiste la razón en cuanto a las reclamaciones por los incentivos en los incisos (a), (c) y (e) del art. 1.

Como hemos señalado, los beneficios del art. 1 de la Ley Núm. 168 no son aplicables exclusivamente a los operadores de servicios médico-hospitalarios de unidades hospitalarias. Al amparo del art. 1 (b), existe una exención de cual se pueden beneficiar los dueños de propiedades, o aquella porción de la propiedad, que cumpla con los siguientes requisitos: (1) sea utilizada para prestar servicios médico-hospitalarios, (2) pertenezca a la unidad hospitalaria; y (3) que los perímetros de la institución no excedan diez (10) cuerdas. Ley Núm. 168, *supra*, art. 1 (b).

En primer lugar, atenderemos el primer y tercer requisito, debido a que estos no presentan mayores controversias. Concluimos que AJM cumple con ambos requisitos. Para recibir la exención del art. 1 (b), la propiedad debe ser utilizada para prestar servicios médico-hospitalarios y no puede exceder de diez (10) cuerdas. AJM es titular de la propiedad inmueble donde opera el Hospital que

presta servicios médico-hospitalarios. El contrato entre AJM y VA estipula que el terreno a ser desarrollado es de ciento catorce mil trecientos (114,300) pies cuadrados, lo cual equivale a 2.6 cuerdas.[22] Al prestar servicios médico-hospitalarios y tener una cabida de 2.6 cuerdas, se satisfacen ambos requisitos.

En cuanto al segundo requisito, el Departamento de Hacienda argumenta que AJM no puede beneficiarse de este incentivo por no ser una unidad hospitalaria.[23] Como hemos resaltado, la definición de "unidad hospitalaria" en el Reglamento Núm. 1686, *supra,* incluye "aquellas facilidades directamente relacionadas con su operación normal. El término 'facilidades directamente relacionadas con su operación normal' incluye los terrenos dedicados a áreas de estacionamiento". *Íd.*

Según el contrato entre VA y AJM, AJM se comprometió con mantener todos los equipos y sistemas del Hospital.[24] Esto incluye: "las aceras, **estacionamientos**, caminos de entrada, **carreteras de acceso privado**, los jardines y arbustos; **utilidades**; y **equipo de servicio al edificio**; incluyendo todo **reparo y reemplazo**".[25] Aunque AJM no sea responsable de los servicios médico-hospitalarios, si contribuye de manera directa a la prestación de los servicios mediante la operación y mantenimiento de las facilidades sin los cuales el Hospital no puede operar normalmente. Por lo tanto, concluimos que AJM cumple con el segundo criterio del art. 1 (b) de la Ley Núm. 138, *supra.*

Por reunir los requisitos del art. 1 (b) de la Ley Núm. 168, *Íd.,* el Recurrente tiene derecho a recibir los incentivos contributivos que ofrece el art. 1 (b).

---

[22] Apéndice del *Recurso de revisión administrativa*, Anejo VIII *supra*, pág. 265.
[23] *Íd.*, *Alegato suplementario de la parte recurrida*, pág. 8.
[24] Anejo VIII, *supra*, pág. 265.
[25] *Íd.*, pág. 266. (Traducción y énfasis nuestro).

IV.

Por los fundamentos que anteceden, *revocamos parcialmente* la *Resolución* de referencia únicamente a los efectos de concederle al Recurrente los incentivos contributivos del art. 1 (b) de la Ley Núm. 168. Así modificada, se *confirma.*

Lo acordó y manda el Tribunal y lo certifica la Secretaria.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones